## THE MONKSHAVEN.

(District Court, E. D. Pennsylvania. May 15, 1918.)

### No. 39.

1. SHIPPING ⊂⊃50—CHARTER PARTY—CONSTRUCTION—PAYMENT TO CHARTER-ER'S AGENT.

Where a charter party provided that agents of the charterer should attend to the ship's business on the customary terms, and respondents, as agents, collected demurrage under directions of the ship's master, *held* that, in view of the custom in such matters, they were entitled to retain a commission of 2½ per cent., the usual amount allowed.

2. SHIPPING ⊂⊃50—CHARTER PARTY—CONSTRUCTION—SHIP'S BUSINESS.

Collection of demurrage is part of a ship's business, within a charter party providing for compensation therefor at the usual rate.

3. SHIPPING ⊂⊃63—MASTER—AUTHORITY.

The master of a vessel has authority to direct the collection of demurrage due.

In Admiralty. Libel by the Erkside Steam Shipping Company, Limited, owner of the British steamship Monkshaven, against Gailey, Davis & Co. Sur exceptions to answer. Exceptions dismissed, and libel dismissed.

Willard M. Harris, of Philadelphia, Pa., for libelant.

H. Alan Dawson and Biddle, Paul & Jayne, all of Philadelphia, Pa., for respondent.

DICKINSON, District Judge. Ordinarily the questions raised by these exceptions and discussed in the argument would be held to be

trial questions, and not questions of pleading. The facts, however, are undisputed, and the case as presented is in reality a case stated, asking the opinion of the court upon the admitted facts. The practical advantages of thus disposing of the case are manifest. Both parties have joined in the request that the court dispose of it on this motion. Because of the practical situation, and of this request, we are willing to do so.

One result of the discussion at bar was to reduce the number of all the questions involved to one, with the possibility of a subquestion. The one question referred to arises out of a provision of a charter party.

[1] As part of the atmosphere of the case, and for the purpose of shortening the discussion of the legal merits of the question, a statement of certain facts may be premised. It is usual (evidenced by the fact of the existence of printed blank forms) for charter parties to provide for the cost of carriage and then allow a rebate from the charge in the guise of a commission to the charterer. Presence of a cesser clause is also frequently to be found in them. It is further usual, and indeed practically necessary, particularly in foreign ports, that some one familiar with it should look after the ship's business while in port. The person who takes this responsibility is by a custom, which is worldwide, entitled to receive what is in effect a retainer, known as an attendance fee. Expressed in terms of moneys of the United States, this sum is $50. We have called it a retainer, because it is paid, whether the person is called upon to perform any actual service or not. The service which he may be called upon to perform can never, of course, be fully anticipated.

Some kinds of service are so usual and customary that they have a place in the printed forms of statements of settlements, and are set forth in charter parties. The share of compensation for some kinds of service it is possible to fix in advance, because such service is always of the same kind and character. It is practically impossible to fix beforehand other kinds of service rendered. It is the practice to leave this to such rate of compensation as is usual and customary. The rebate to which we refer is usually measured by a percentage, or, as it is called, a commission, on the sum which is finally collected for freight, dead freight, and demurrage. It has because of this become usual to provide in charter parties that the agents of the charterer shall attend to the ship's business. As before stated, it is unknown just what he may do, and, for the reasons before stated, the share of his compensation cannot be otherwise fixed (with some exceptions) than by a reference to what is usual and customary.

It is stipulated in the charter party that a rebate of 2½ per cent. shall be allowed to the charterer. It is further stipulated that the agents of the charterer were to attend to the ship's business. It was further provided that this employment should be on the "customary terms." In addition to freight, and possible dead freight, demurrage was payable to the ship. The respondents were the persons who looked after the ship's business at this port. The freight was collected by some one in London. The demurrage, at the instance and on the request of the master of the ship, was collected here by the respondents. When

the settlement came to be made, there was charged against the ship, in addition to other items not in dispute, an item of $50 for the retainer or attendance fee above mentioned. No objection was made to this. There was also included the sum of $126.04, being the charge made by the respondents for the collection of the sum of $5,041.75 demurrage. The charge is based upon a percentage of 2½ per cent., and is identified on the settlement sheet by the words, "Commission on collecting demurrage, $126.04." This item is in dispute, and, having been retained by the respondents, this proceeding has been instituted to test, in order to have determined their right to make the charge. The pertinent clause in the charter party is as follows:

"A commission of 2½ per cent. on freight, dead freight, and demurrage is due on shipment of cargo to charterer, or his agents, vessel lost or not lost, whose agents at port of loading are to attend to ship's business on customary terms."

As before stated, the master directed the respondents to collect this demurrage, and no question was raised as to the amount. The sole question is their right to anything. The broad question referred to as the only one involved is respondents' right to this sum of money under a proper construction of the charter party.

We construe the clause above set forth to mean that the respondents were engaged to look after the ship's business, and that they had the right to receive compensation therefor, to be measured by what is customary, and, as there is no dispute over the amount of the charge, we hold that they were entitled to receive, and of course to retain out of the moneys in their hands, this $126.04, for precisely the same reasons which have induced the libelants to admit that the respondents were entitled to the $50 retainer or attendance fee.

[2, 3] The subsiduary questions referred to are: (1) Whether the collection of demurrage was any part of the ship's business; and (2) whether the master had authority to commit to the respondents the collection of this demurrage. It seems to us so clear that the right answer to these questions is an affirmative one that we do not feel justified in lengthening this opinion by setting forth the reasons for so holding.

To meet the question before us in the form in which it is presented, we express the opinion and view that the answer made to the libel, if true in fact, is a good answer in law, and, as it is admitted to be true in fact, the defense to the libel is complete.

We formally dispose of the exceptions to the answer by dismissing them.

### Supplemental Order.

The parties having stipulated that this cause be heard as on trial upon libel, answer, and proofs, with the answer to be further admitted as evidence of the facts therein stated, the facts are so found, and it is ordered that the libel be dismissed, with costs to the respondent.